■ In the Matter of NIAGARA MOHAWK POWER CORPORA-TION, Respondent, v CITY OF COHOES BOARD OF ASSESSORS et al., Appellants. [720 NYS2d 241] —Peters, J. P. Appeals from an amended order and judgment and a second amended order and judgment of the Supreme Court (Casey, J.H.O.), entered December 29, 1999 and January 21, 2000 in Albany County, which granted petitioner's application, in a proceeding pursuant to RPTL article 7, to reduce real property tax assessments on a parcel of property owned by petitioner.

This proceeding challenges the 1994 through 1997[1] tax assessments made on the School Street Hydroelectric Generating Station (hereinafter the facility), property that petitioner owns in the City of Cohoes, Albany County. Prior to a hearing, the parties stipulated, *inter alia*, that appraisals of the facility's value would be computed with the "reproduction cost new less depreciation" (hereinafter RCNLD) method and that the "reproduction cost new" (hereinafter RCN) figures would not be reduced for "economic obsolescence."[2]

As the RCNLD method is comprised of both a land value component, here stipulated at $2 million, and a RCN figure, the "present-day cost of reproducing the property's improvements" (*Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill*, 263 AD2d 558, 559), reduced by the "physical depreciation * * * attributable to the existing structures as of the valuation date" (*id.*, at 559; *see, Matter of City of Troy v Kusala*, 227 AD2d 736, 737, n 2, *lv denied* 89 NY2d 801), the engineer and ad valorem tax appraiser for respondent City of Cohoes, George Sansoucy, prepared an appraisal report using one of several methods for computing RCN—the "sticks and bricks method," also referred to as the "unit-cost method" or the "quantity survey method." This method produces a cost estimate to reproduce the property based upon a detailed inventory of direct costs, such as labor, materials and equipment, coupled with indirect costs. Petitioner, however, hired Kleinschmidt Associates (hereinafter KA) solely for an engineering estimate of RCN using the "sticks and bricks" method due to its specialized expertise in the design, construction and operation of hydroelectric generating plants. With KA working thereafter with AUS Consultants to provide information to assist with the depreciation analysis, AUS made its own computation of RCN using the "trended original costs"

---

1. For 1994 and 1995 the property was assessed at $2,500,000, and for 1996 and 1997 it was assessed at $2,800,000.

2. The parties also stipulated that the equalization rates used in the 1994 through 1997 assessments were correct.

method—computing the original investment that was not subsequently replaced or retired and applying corrected indices to convert the original investment into a present day dollar value. AUS then determined the amount of depreciation using information obtained from KA and ultimately arrived at a RC-NLD valuation for each tax year and the assessed values reflected in its report.

At trial, petitioner submitted the report prepared by KA (hereinafter the KA report), along with the testimony of the hydroelectric engineer who oversaw the report's compilation, Paul Williams. It also submitted the appraisal report prepared by AUS (hereinafter the AUS report), along with the testimony of its appraiser, Charles Jerominski. The City submitted the report prepared by Sansoucy and called him as its witness. Petitioner vociferously objected to the admission of both Sansoucy's testimony and his appraisal report, alleging a lack of expertise and foundational support; Supreme Court reserved decision.

Thereafter, Supreme Court found that petitioner met its initial burden of demonstrating an overvaluation for the years in question. Sustaining the objection to Sansoucy's testimony regarding his appraisal as lacking "qualified expertise," the court also rejected his report because of its lack of foundational support. Finding Williams to be "eminently qualified by experience, background and training," the court relied upon his valuation of the facility's turbine generators and noted that his methodology yielded more accurate results than that of Sansoucy. Next, reviewing the testimony of Jerominski and the AUS report, the court found the appraisal to be "sound, sensible, well-founded and supported by the evidence." After the court adopted the AUS report's use of straight line depreciation, its RCNLD valuations and its reduced calculation of assessed value for the relevant taxable years, this appeal ensued.

Initially, we must determine whether petitioner has overcome the presumptive validity accorded to a tax assessment by the submission of substantial evidence demonstrating an overvaluation (*see, Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196; *Matter of State of New York v Town of Hardenburgh*, 273 AD2d 769, 771). In this context, both the documentary and testimonial evidence "will most often consist of a detailed, competent appraisal based on standard, accepted appraisal techniques * * * prepared by a qualified appraiser" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes, supra,* at 196). Upon a showing of

"a valid and credible dispute regarding valuation" (*Matter of FMC Corp. v Unmack*, 92 NY2d 179, 188; *see, Matter of New Cobleskill Assocs. v Assessors of Town of Cobleskill*, 280 AD2d 745 [decided herewith]), using " 'sound theory and objective data' " (*Matter of FMC Corp. v Unmack, supra*, at 188, quoting *Matter of Commerce Holding Corp. v Board of Assessors*, 88 NY2d 724, 732), the presumption is overcome.

Briefly addressing respondents' challenge to the admissibility of both the KA report and Williams' testimony with respect thereto, we find that since respondents failed to make a timely objection to their introduction, the issue is unpreserved for our review (*see, Isaacson v Karpe*, 84 AD2d 868, 869; *see generally, Matter of Michelle S.*, 195 AD2d 721, 722).

With no other viable challenge to the KA report or Williams' testimony based thereupon, respondents focused on the trended original costs method of valuation employed by AUS and asserted that unverified records maintained by petitioner were used in connection therewith. Without addressing those claimed deficiencies at this juncture, we find that petitioner "demonstrate[d] the existence of a valid and credible dispute regarding valuation" (*Matter of FMC Corp. v Unmack, supra*, at 188) by the proffer of Williams' testimony and the KA report grounded upon " 'sound theory and objective data' " (*id.*, at 188, quoting *Matter of Commerce Holding Corp. v Board of Assessors, supra*, at 732) to denote a RCN value which was markedly different than that calculated by respondents.

Left to "weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued" (*Matter of FMC Corp. v Unmack, supra*, at 188), we are constrained to: "not set aside a finding of value made by Supreme Court ' "unless such finding is based upon [an] erroneous theory of law or [an] erroneous ruling in the admission or exclusion of evidence, or *unless it appears that the court * * * has failed to give to conflicting evidence the relative weight which it should have* and thus * * * arrived at a value which is excessive or inadequate" ' " (*Matter of Universal Packaging v Assessor of City of Saratoga Springs*, 259 AD2d 875, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 61, quoting *Matter of City of New York [Newtown Cr.]*, 284 NY 493, 497 [emphasis in original]).

Reviewing the critical challenge to Sansoucy's qualifications as an appraiser, we cannot conclude that Supreme Court's finding, that he lacked qualified expertise to testify as an appraiser but not as an engineer, constituted an abuse of discre-

tion (*see, Edgewater Apts. v Flynn*, 216 AD2d 53, 54) or an erroneous ruling (*see, Matter of Universal Packaging v Assessor of City of Saratoga Springs, supra*, at 875). Despite his Master's degree in civil engineering and his prior experience preparing valuation reports for power generation facilities, Sansoucy is not licensed as an appraiser in New York, is not a member of any appraisal organizations and has never trained under the supervision of a qualified appraiser.

Nor do we find error in Supreme Court's rejection of Sansoucy's valuation report since he admitted that it failed to include many of the underlying facts and calculations upon which he relied to estimate an RCN value (*see, Matter of Fistraw-Del Holding Corp. v Assessor for Town of Colonie*, 235 AD2d 660, 662; 22 NYCRR 202.59 [g] [2]), including information gleaned from one of his employees who neither identified the source of the information nor independently confirmed its accuracy (*see, Matter of Fistraw-Del Holding Corp. v Assessor for Town of Colonie, supra*, at 662).

Addressing the numerous challenges to the trended original costs method of valuation employed in the AUS report as inherently unreliable due to both the method employed and Jerominski's alleged failure to have independently verified his foundational support, we note that the distinguishing feature of the conflicting RCN values was the estimation of the facility's turbine generators. On this key calculation, Supreme Court found the KA report's valuation to be more accurate—an RCN determination using the "sticks and bricks" method which had a direct and substantial impact upon the RCNLD conclusions. Upon our independent review, we find that the methodology employed by AUS to arrive at an RCN valuation may well have resulted in skewed valuations since some of the information that AUS relied upon was not independently verified. Therefore, we find that the KA report's RCN figures should have been utilized (*see, Matter of Universal Packaging v Assessor of City of Saratoga Springs*, 259 AD2d 875, *supra*). Accordingly, we would correct Supreme Court's valuations to reflect the RCN values denoted by the KA report and agree that in adopting the methodology employed therein, deductions for piecemeal construction would not be necessary.

The physical depreciation calculations in the AUS report are not flawed. Based on the straight line depreciation method, the AUS report's calculations were made after a review of, *inter alia*, both regional and national depreciation statistics databases, service life figures reported in Federal documents and the analysis of service lives contained in the KA report

which were based upon the personal observations of KA's engineer. As this method has previously been permitted (*see generally, Matter of City of Troy v Kusala*, 227 AD2d 736, 740-741, *supra; Matter of Tennaco, Inc. v Town of Cazenovia*, 104 AD2d 511, 513), we decline further review.

Nor do we find error in allowing deductions for net salvage value under the RCNLD valuation, as stipulated, since depreciation must also reflect that the value of a property will decrease when the cost to remove equipment at its retirement exceeds the amount that the equipment can be sold for on the open market.

Having reviewed and rejected respondents' remaining contentions, we find that petitioner sustained its burden to prove an overvaluation for all of the years at issue by a preponderance of the evidence (*see, Matter of FMC Corp. v Unmack*, 92 NY2d 179, *supra*). Accordingly, we remit this matter to Supreme Court for its utilization of the RCN values determined in the KA report, without a deduction for piecemeal construction, so that the correct RCNLD valuation can be computed using the depreciation analysis in the AUS report. Such amount can thereafter be added to the stipulated value of the facility's land and water rights and be multiplied by the applicable equalization rates to arrive at the correct assessed value for the facility for each year in question.

Carpinello, Mugglin and Lahtinen, JJ., concur; Spain, J., not taking part. Ordered that the amended order and judgment and the second amended order and judgment are modified, on the law and the facts, without costs, by reversing so much thereof as calculated an assessed value of petitioner's facility for the tax years 1994 through 1997; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.